**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

PHILIP J. STODDARD,

       Plaintiff,

v.                                   CASE NO.  4:06cv414-RH/WCS

THE FLORIDA BOARD OF BAR
EXAMINERS et al.,

       Defendants.

_____/

**ORDER OF DISMISSAL**

The Florida Board of Bar Examiners filed charges against plaintiff challenging his fitness to practice law in Florida.  While those charges were pending, plaintiff filed this action, asserting the Board was proceeding in violation of the United States Constitution and the Americans with Disabilities Act.  Plaintiff seeks both injunctive relief and damages.  Defendants have moved to dismiss.

In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982), the Supreme Court held that a federal action seeking injunctive relief from ongoing bar disciplinary proceedings

was barred by the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L.

Ed. 2d 669 (1971).  Finding *Middlesex* controlling, I dismissed an earlier action for

injunctive relief brought by another applicant to the Florida Bar, and the Eleventh

Circuit affirmed.  *See Lawrence v. Schwiep*, No. 4:05cv14-RH (N.D. Fla. Oct. 7,

2005) (unpublished order of dismissal), *aff'd sub nom. Lawrence v. Rigsby*, No.

05-16011, 06-10776, 2006 WL 2690232 (11th Cir. Sept. 21, 2006).[1]  For the same

reasons, I now dismiss the claims for injunctive relief in the case at bar.

I also dismiss plaintiff's damages claims.  Those claims fail based on a

combination of Eleventh Amendment immunity (available to the Board of Bar

Examiners and official capacity defendants with respect to all claims other than,

perhaps, those arising under the ADA), qualified immunity (available to the

individual defendants), and failure to state a claim on which relief may be granted

(with respect to any claims arising under the ADA that are not barred by the

Eleventh Amendment or qualified immunity).

## I.
## Background:  The Bar Admission Process

*Lawrence v. Schwiep* described the Florida Bar admission process as

follows:

---

[1] For the convenience of the parties, copies of the *Lawrence* opinions will be attached to this order.

Under Florida law, an applicant who passes the bar examination is entitled to admission to the Bar if and only if he meets the state's "character and fitness" requirements. "The purpose of the character and fitness screening before admission to The Florida Bar is to protect the public and safeguard the judicial system." Fla. Bar Admiss. R. 1-14.1. The Florida Board of Bar Examiners, an arm of the Florida Supreme Court, reviews an applicant's background, may conduct an informal hearing (*see* Fla. Bar Admiss. R. 3-22), and determines either that the applicant has met the character and fitness requirements or that "specifications" should be filed "charging the applicant or registrant with matters which if proven would preclude a favorable finding by the Board." Fla. Bar Admiss. R. 3-22.5. An applicant who contests the specifications is entitled to a formal evidentiary hearing. Fla. Bar Admiss. R. 3-23.2.

Following the formal hearing, the Board again determines, now based on the evidence presented at the hearing, whether the applicant has established his or her character and fitness to practice law. If the Board concludes that the applicant has *not* established his or her character and fitness, the Board must enter findings of fact and conclusions of law. Fla. Bar Admiss. R. 3-23.7. An unsuccessful applicant has a right of review by the Florida Supreme Court, which may independently review the record, *see Florida Bd. of Bar Examiners Re: L. K. D.*, 397 So. 2d 673 (1981), and address all challenges to the Board's determination, including those based on the United States Constitution. Absent review by the Florida Supreme Court, the findings of the Board become final. Fla. Bar Admiss. R. 3-23.7.

*Lawrence v. Schwiep* at 2-3.

## II.
## Background:  The Case at Bar

Plaintiff Philip Stoddard applied for admission to the Florida Bar in November 1999. He passed the bar examination. The Florida Board of Bar

Examiners undertook a character and fitness review.

On November 26, 2001, the Board filed specifications charging Mr.

Stoddard with conduct purportedly demonstrating his unfitness to practice law.

Proceedings on the specifications were put on hold at Mr. Stoddard's request while

he pursued litigation against the Board and others in this court (before a different

district judge) and on appeal to the Eleventh Circuit.  The Eleventh Circuit

ultimately upheld dismissal of that case for lack of ripeness and standing (because

Mr. Stoddard was not then pursuing his application).  *See Stoddard v. Supreme*

*Court*, No. 03-11662, 87 Fed. Appx. 913 (table) (11th Cir. Oct. 24, 2003)

(unpublished opinion) (included in record at document 15 attachment 3).  In setting

forth the background of the case, the Eleventh Circuit said:

> Stoddard admitted that his bar application showed a 25-plus-year
> history of physical and mental illness, a complete financial collapse in
> 1979, a bitter divorce, three hospitalizations for acute psychosis in
> 1978-80, and a 1996 bankruptcy involving 20 years of financial
> instability and sporadic employment.  Stoddard claimed that, while the
> application process was pending, he was diagnosed with bipolar
> disorder, which was, at the time of the complaint, controlled with
> medication rendering him symptom free.  Stoddard asserted that his
> bar application, taken as a whole, showed moral fitness through a
> lengthy, diligently pursued and successful recovery in the face of
> severe hardship.  He claimed that he had successfully managed his
> finances for more than five years, never been convicted of a felony or
> contempt of court, and never been accused of conduct involving moral
> turpitude.

*Id*. at 2-3.

The Board filed supplemental specifications on July 26, 2005.  A formal

hearing on the specifications was held on September 15, 2006.  After the hearing,

the Board voted to deny Mr. Stoddard's application and to recommend that no

further application be entertained for five years.  The Board issued a letter

informally notifying Mr. Stoddard of the decision, but (at least so far as shown by

this record) the Board has not yet issued its formal findings of fact and conclusions

of law.  According to the notice provided to Mr. Stoddard, the Board's

recommendation will be due within 60 days after the filing of a transcript of the

hearing.

Meanwhile, on September 8, 2006—a week before the hearing—Mr.

Stoddard filed this action, naming as defendants the Board, the Board's chairman,

executive director, general counsel, and at least one member, and the Chief Justice

of the Florida Supreme Court, identified as the Supreme Court liaison to the Board.

Mr. Stoddard asserts the Board has violated both the United States Constitution

and the Americans with Disabilities Act by inquiring into his mental health and

circulating information to Board members involved in reviewing his application,

all with the effect of delaying his application and damaging his reputation.  Mr.

Stoddard alleges he has a disability within the meaning of the ADA, at least in part

because he is regarded as disabled by the defendants.

Defendants have moved to dismiss on various grounds.  I conclude in

section III of this order that the claims for injunctive relief must be dismissed under

*Middlesex* and *Younger*—precisely the same result reached both in this court and in

the Eleventh Circuit in *Lawrence*.  I conclude in section IV that the damages claims

must be dismissed based on the Eleventh Amendment, qualified immunity, or, with

respect to the ADA, failure to state a claim.  I do not reach the other grounds

asserted in the motions.

## III.
## Injunctive Relief

*Lawrence v. Schwiep* addressed the governing legal standards in language

equally applicable in the case at bar:

> In *Younger* [*v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d
> 669 (1971)], the Court held that the defendant in a state criminal
> proceeding ordinarily may not bring a federal lawsuit challenging the
> constitutionality of the pending state proceeding.  The defendant must,
> instead, present his or her federal constitutional defenses in the state
> proceeding.  In *Middlesex* [*County Ethics Comm. v. Garden State Bar
> Assoc.*, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)], the
> Court extended *Younger* to state bar disciplinary proceedings, which
> the Court characterized as judicial in character.  *Younger* and
> *Middlesex* (and other cases in the same line) are based on the interest
> in avoiding federal interference with ongoing state judicial
> proceedings seeking to vindicate important state interests and the
> recognition that federal defenses can be fully and fairly adjudicated in
> state proceedings of this type.  A long line of cases applies these
> principles.  *See, e.g., 31 Foster Children v. Bush*, 329 F.3d 1255,
> 1274-75 (11th Cir. 2003).

> Under these cases, whether a federal court should abstain in deference to state proceedings turns on three questions:  "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges."  *31 Foster Children*, 329 F.3d at 1274 (alterations by Eleventh Circuit), quoting *Middlesex*, 457 U.S. at 432.
>
> In the case at bar, precisely as in *Middlesex*, the answer to each of these questions is yes.  Florida bar admission proceedings, like the New Jersey attorney disciplinary proceedings at issue in *Middlesex*, are judicial in nature.  *See* Fla. Bar Admiss. R. 1-11 ("admission of attorneys to the practice of the profession of law is a judicial function."); *cf. Dale v. Moore*, 121 F.3d 624 (11th Cir. 1997) (holding admission decision of Florida Supreme Court "judicial" for purposes of *Rooker-Feldman* doctrine).  Florida's interest in attorney admission is as strong as the interest in attorney discipline involved in *Middlesex*.  And the Florida system afforded Mr. Lawrence a full and fair opportunity to raise constitutional challenges in the Florida Supreme Court—an opportunity as adequate as that provided in *Middlesex* or in any other case involving *Younger* abstention.

*Lawrence v. Schwiep* at 4-6.  In a footnote, the order added:

> Moreover, if the ability to raise constitutional issues in the Florida Supreme Court were unclear—which it is not—any doubt on this score would properly be resolved in favor of abstention.  *See Butler v. Alabama Judicial Inquiry Commission*, 261 F.3d 1154, 1159 n.6 (11th Cir. 2001).

*Lawrence v. Schwiep* at 6 n.1.  This same statement is true not only of

constitutional issues, but also of issues arising under the Americans with

Disabilities Act.

To be sure, there is a difference between *Middlesex*, on the one hand, and

both *Lawrence* and the case at bar, on the other.  The difference is that *Middlesex*

dealt with charges against an *existing member* of a state bar, whereas *Lawrence* and

the case at bar involve charges against *applicants* for admission.  *Lawrence v.*

*Schwiep* explained why this difference does not call for a different result:

> [U]nder the Florida system, an applicant to the bar who passes the
> examination is entitled to admission unless his or her character and
> fitness are found lacking.  In order to block admission on the ground
> of character and fitness, the Board must file "specifications" setting
> forth the basis for its action.  Specifications against an applicant are,
> for present purposes, no different from charges against an existing
> member of the Bar.  In either case, a person who wishes to practice
> law in Florida is subjected to specific charges that, if sustained, would
> preclude the person from doing so.  In either case, the final decision
> resides with the Florida Supreme Court based on evidence presented
> in a formal hearing before an agency that is an arm of the court.  In
> either case, federal constitutional defenses may be presented fully and
> fairly for determination by the Florida Supreme Court, with federal
> review available only in the United States Supreme Court by petition
> for writ of certiorari.  And in either case, interference by a federal
> court with the ongoing proceedings would be equally disruptive.
> When an applicant is entitled to admission unless pending charges are
> sustained, those pending charges are, for purposes of *Younger* and
> *Middlesex*, no different from charges against an existing member of
> the Bar.  *Middlesex* remains controlling.

*Lawrence v. Schwiep* at 9.

Mr. Stoddard asserts that *Younger* recognized a bad-faith exception to the

rule requiring federal courts not to interfere in ongoing state proceedings of the

type at issue, and Mr. Stoddard invokes the bad faith exception here.  The analysis

of this issue in *Lawrence v. Schwiep* is again fully applicable:

> Mr. Lawrence seeks to invoke the bad-faith exception to *Younger*. Whatever the precise contours of that exception, it is assuredly narrow.  Mr. Lawrence has alleged no facts that would support its application in the case at bar.  To the contrary, if the allegations of the case at bar were sufficient to invoke the [bad] faith exception, then the exception would swallow the rule, and there would be little left of *Younger*.

*Lawrence v. Schwiep* at 10.  Mr. Stoddard, like Mr. Lawrence, has alleged no facts

that would support application of the bad-faith exception.

To this point in the analysis, then, *Lawrence* is identical to the case at bar.

Mr. Stoddard deals with *Lawrence* by saying the case was wrongly decided, but I

disagree, as did the Eleventh Circuit panel that affirmed the decision and thought

the issue not close enough to warrant a published opinion.  It is true, of course, that

neither my decision in *Lawrence* nor the Eleventh Circuit's unpublished affirmance

is technically binding.[2]  I follow those decisions in the case at bar not because they

are binding but because they are right.

There is, however, a difference between *Lawrence* and the case at bar.  Mr.

Lawrence's federal claims all arose under the Constitution.  Mr. Stoddard, in

contrast, asserts not only federal constitutional claims, but also claims arising

under the Americans with Disabilities Act.  I conclude, however, that this does not

affect the analysis under *Younger*.  The point of *Younger* is that a federal court

---

[2] District court decisions are not binding precedent, nor are unpublished Eleventh Circuit opinions.

ought not interfere in an ongoing state enforcement proceeding of the type at issue,

and that federal defenses can and must be presented in the state proceeding, not in

an independent federal lawsuit.  The same reasoning applies to federal defenses

whether arising solely under the Constitution (as in *Younger* itself, *Middlesex*, and

*Lawrence*) or also partly under a federal statute (as in the case at bar).

In sum, Mr. Stoddard's claims for injunctive relief are not meaningfully

distinguishable from those in *Lawrence*.  Here, as there, the claims for injunctive

relief will be dismissed.

**IV.**
**Damages**

Mr. Stoddard also seeks an award of damages.  Claims for injunctive relief

properly may be dismissed based on *Younger*, but under the law of this circuit,

damages claims in analogous circumstances should be stayed, not dismissed.  *See*

*Prather v. Norman*, 901 F.2d 915, 919 (11th Cir. 1990) (citing *Deakins v.*

*Monaghan*, 484 U.S. 193, 202, 108 S. Ct. 523, 529, 98 L. Ed. 2d 529 (1988)).  A

stay will not be entered here, however, because Mr. Stoddard's damages claims

properly should be dismissed on other grounds.

**A.**
**Eleventh Amendment**

With the possible exception of claims arising under the ADA, the Eleventh

Amendment bars all of Mr. Stoddard's damages claims against the Florida Board

of Bar Examiners and any official-capacity defendant.  *See, e.g., Edelman v.*

*Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) (holding

retrospective relief under §1983 that would be payable from state treasury barred

by Eleventh Amendment); *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877,

163 L. Ed. 2d 650 (2006) (holding that Title II of the ADA validly abrogates

Eleventh Amendment immunity when the conduct at issue also violates the

Fourteenth Amendment and leaving open the issue of whether the abrogation

validly extends further).  Mr. Stoddard's non-ADA damages claims against these

defendants will be dismissed based on Eleventh Amendment immunity.

## B.
## Qualified Immunity

Defendants sued in their individual capacities do not have Eleventh

Amendment immunity, but they do have qualified immunity.  Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271

(1986); *see generally Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d

666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396

(1982).

Mr. Stoddard has not alleged any respect in which any individual defendant

has violated clearly established law.  Based on his own admissions as recounted in

his earlier case in the Eleventh Circuit, Mr. Stoddard was hospitalized three times

for acute psychosis, had a 25-plus-year history of physical and mental illness,

suffered one complete financial collapse and went through a separate bankruptcy

proceeding almost 20 years later, had sporadic employment over a long period,

and, after submitting his application to the Bar, was diagnosed with bipolar

disorder, which was controlled only with medication.  This background might or

might not disqualify Mr. Stoddard from bar membership, but there was no clearly

established law at the times at issue (and there is none now) suggesting that a

state's bar examiners could not at least make a full inquiry into such a background.

Mr. Stoddard's claims against defendants in their individual capacities will

be dismissed based on qualified immunity.

## C.
## ADA Claims for Damages

What remain are, at most, claims for damages under the ADA.  Those claims

properly can go forward on the merits only against the Board of Bar Examiners.

This is so because any claims against other defendants in their *official* capacities

are redundant to claims against the Board and properly should be dismissed on that

basis, *see Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (approving

dismissal of official capacity defendants whose presence was merely redundant to

naming of institutional defendant), and any ADA claims against other defendants in their *individual* capacities are barred by qualified immunity and in any event are unfounded because the ADA allows recovery only against the entity engaged in the violation, not against individual employees or agents of the entity. *See, e.g., Badillo v. Thorpe*, 158 Fed.Appx. 208, 211 (11th Cir. 2005) ("there is no individual capacity liability under Title II of the ADA" (citing *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases))).

Mr. Stoddard claims that the same conduct that violated the ADA also violated the Fourteenth Amendment.  If that were so, the ADA claims would not be barred by the Eleventh Amendment.  *See United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity when the conduct at issue also violates the Fourteenth Amendment).  I thus address the ADA claims on the merits.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  Mr. Stoddard has alleged, and for purposes of the instant motion I accept as true, that he is a qualified individual with a disability (either because he has a real impairment

covered by the Act, or because he is regarded by the Board as having such an

impairment).  I assume further that the Board of Bar Examiners is a public entity

covered by the Act, and that both membership in the Bar, on the one hand, and the

process by which applicants are evaluated, on the other hand, are covered

activities.

This does not mean, however, that the Board could not properly inquire into

Mr. Stoddard's background, including his mental health.  It may be, as he says, that

neither his mental health nor anything in his background should preclude his entry

into the Florida Bar.  And it may be that in some circumstances the mere act of

inquiring about or investigating a real or perceived physical or mental impairment

constitutes discrimination in violation of the ADA.  But Mr. Stoddard's own

description of his background, as recounted by the Eleventh Circuit on Mr.

Stoddard's earlier appeal, rendered his an application rife with red flags.  That an

applicant has bipolar disorder or any of a variety of other mental health conditions

does not, without more, preclude his admission to the Florida Bar, but neither does

such a mental health condition insulate the applicant from a full inquiry into his

background and fitness to practice law.  The Board thus could properly make the

same thorough investigation of Mr. Stoddard's background as it made of every

other applicant.  And this inquiry could properly include both mental health issues

and other apparently unrelated indicia of fitness, such as any history of financial irresponsibility or unprofessional conduct. Finally, the Board of course was entitled to distribute information it obtained on these matters to members of the Board who were involved in the decision making process. Mr. Stoddard has not alleged that the Board did anything more than this.

In sum, to the extent Mr. Stoddard's ADA claims against the Board are not barred by *Younger* or Eleventh Amendment immunity, he has failed to state a claim on which relief may be granted. The claims will be dismissed on this basis.

## V.
## Conclusion

Mr. Stoddard has been afforded (and will continue to be afforded) a full opportunity to present his federal issues in the ongoing proceedings before the Board of Bar Examiners. Mr. Stoddard will be entitled to do so again on review in the Florida Supreme Court and, if dissatisfied with the result there, by filing a petition for certiorari in the United States Supreme Court. Mr. Stoddard may not obtain injunctive relief here and thus interfere with the state's attempt to enforce its laws.

Mr. Stoddard's claims for damages are barred by the Eleventh Amendment or qualified immunity, except, perhaps, to the extent based on the ADA. He has failed to state an ADA damages claim on which relief may be granted.

For these reasons,

IT IS ORDERED:

Defendants' motions to dismiss (documents 16 and 28) are GRANTED.  The
clerk shall enter judgment stating, "The complaint is dismissed.  The dismissal of
claims against the defendant Florida Board of Bar Examiners for damages under
the Americans with Disabilities Act is with prejudice.  The dismissal of claims for
damages against other defendants in their individual capacities is with prejudice.
In all other respects the dismissal is without prejudice."  The clerk shall close the
file.

SO ORDERED this 22d day of December, 2006.

s/Robert L. Hinkle
Chief United States District Judge